IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOHN HENRY HARRIS,

                Plaintiff,

vs.                                   Case No. 11-1146-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy.

Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On May 7, 2010, administrative law judge (ALJ) Robert J. Burbank issued his decision (R. at 12-19). Plaintiff alleges that he has been disabled since September 8, 2008 (R. at 12). Plaintiff is insured for disability insurance benefits through September 30, 2012 (R. at 14). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since September 8, 2008, his alleged onset date (R. at 14). At step two, the ALJ found that plaintiff had the following severe

4

impairments: low back strain and status post laminectomy (R. at 14).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 15).  After determining plaintiff's RFC (R. at 15), the ALJ determined at step four that plaintiff was unable to perform past relevant work (R. at 17).  At step five, the ALJ determined that other jobs exist in significant numbers in the national economy that plaintiff could perform (R. at 18).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 18).

**III.  Did the ALJ err in his finding that plaintiff's impairments do not meet or equal a listed impairment?**

Plaintiff has the burden to present evidence establishing that his impairments meet or equal a listed impairment.  Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005).  In order for the plaintiff to show that his impairments match a listing, plaintiff must meet **"*all"*** of the criteria of the listed impairment.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.  Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990)(emphasis in original).

In his brief, plaintiff argues that his impairments meet listed impairment 1.04A (Doc. 12 at 15, 17).  This impairment is as follows:

1.04 *Disorders of the spine* (e.g., herniated

5

nucleus pulposus, spinal arachnoiditis,
spinal stenosis, osteoarthritis, degenerative
disc disease, facet arthritis, vertebral
fracture), resulting in compromise of a nerve
root (including the cauda equina) or the
spinal cord. With:

A. Evidence of nerve root compression
characterized by neuro-anatomic distribution
of pain, limitation of motion of the spine,
motor loss (atrophy with associated muscle
weakness or muscle weakness) accompanied by
sensory or reflex loss and, if there is
involvement of the lower back, positive
straight-leg raising test (sitting and
supine);

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2011 at 460).

Plaintiff does not even discuss the criteria of 1.04A, nor
does plaintiff make any effort to demonstrate how the evidence
establishes that plaintiff's impairments meet or equal listed
impairment 1.04A.  Because plaintiff has the burden to present
evidence establishing that his impairments meet or equal a listed
impairment, in the absence of any effort by plaintiff to point to
any evidence that would support a finding that his impairments
meet listed impairment 1.04A, the court finds this argument to be
without merit.

**IV.  Did the ALJ err by failing to discuss the medical opinions
expressed by Dr. Munhall?**

The ALJ found that plaintiff had the RFC to perform the full
range of light work as defined in 20 C.F.R. §§ 404.1567(b) and
416.967(b) (R. at 15).  Light work is defined in those

regulations as follows:

> Light work involves lifting no more than 20
> pounds at a time with frequent lifting or
> carrying of objects weighing up to 10 pounds.
> Even though the weight lifted may be very
> little, a job is in this category when it
> requires a good deal of walking or standing,
> or when it involves sitting most of the time
> with some pushing and pulling of arm or leg
> controls. To be considered capable of
> performing a full or wide range of light
> work, you must have the ability to do
> substantially all of these activities. If
> someone can do light work, we determine that
> he or she can also do sedentary work, unless
> there are additional limiting factors such as
> loss of fine dexterity or inability to sit
> for long periods of time.

(20 C.F.R. §§ 404.1567(b), 416.967(b) (2011 at 395, 990).

However, this regulation defines the categories of work,

including light work, based only on exertional requirements.   20

C.F.R. §§ 404.1567, 416.967.   Exertional and nonexertional

limitations and restrictions are defined as follows:

> Exertional capacity addresses an individual's
> limitations and restrictions of physical
> strength and defines the individual's
> remaining ability to perform each of seven
> strength demands: Sitting, standing, walking,
> lifting, carrying, pushing, and pulling. An
> exertional limitation is an impairment-caused
> limitation of any one of these activities.
>
> Nonexertional capacity considers any
> work-related limitations and restrictions
> that are not exertional. Therefore, a
> nonexertional limitation is an
> impairment-caused limitation affecting such
> capacities as mental abilities, vision,
> hearing, speech, climbing, balancing,
> stooping, kneeling, crouching, crawling,
> reaching, handling, fingering, and feeling.

7

> Environmental restrictions are also
> considered to be nonexertional.

SSR (Social Security Ruling) 96-9p, 1996 WL 374185 at *5.[1]

Dr. Munhall performed an independent medical examination on June 15, 2009 (R. at 303-307).  Dr. Munhall opined that plaintiff's subjective complaints were compatible with his objective findings, and found no evidence of symptom magnification.  Dr. Munhall also opined that plaintiff is at maximum medical improvement regarding his injury of August 24, 2008 (R. at 306).  Dr. Munhall made the following findings regarding limitations on plaintiff's ability to work:

> Work Capacity: Permanent modified duty.  No
> static or repetitive trunk rotation.  No
> static or repetitive loaded trunk flexion,
> bending, squatting, or stooping.  Maximum
> occasional loaded spine lift and carry 30
> pounds and push/pull 40 pounds at waist
> level.

(R. at 307).  Dr. Munhall stated that the above work restrictions were provided to prevent acceleration of his lumbar spine disk syndrome, or aggravation and triggering of his myofascial pain to the right lower extremity (R. at 307).

The ALJ failed to even mention this report by Dr. Munhall in his decision.  The limitations contained in Dr. Munhall's report are not included in the ALJ's RFC findings.  The question before

---

[1]Thus, postural limitations, manipulative limitations, visual limitations, communicative limitations, and environmental limitations fall under the category of non-exertional limitations (See R. at 296-299 for a list of types of exertional, manipulative, visual, communicative and environmental limitations).

the court is whether the failure to either include the limitations contained in the report in the RFC findings, or, in the alternative, explain why the limitations in Dr. Munhall's report are not contained in the RFC findings, constitutes clear error requiring that the decision of the ALJ be reversed.

An ALJ must evaluate every medical opinion in the record. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). This rule was recently described as a "well-known and overarching requirement." Martinez v. Astrue, 2011 WL 1549517 at *4 (10th Cir. Apr. 26, 2011). Even on issues reserved to the Commissioner, including plaintiff's RFC and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored. Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3. The ALJ "will" evaluate every medical opinion that they receive, and will consider a number of factors in deciding the weight to give to any medical opinion. 20 C.F.R. §§ 404.1527(d), 416.927(d). It is clear legal error to ignore a medical opinion. Victory v. Barnhart, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005). Furthermore, according to SSR 96-8p:

> If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

1996 WL 374184 at *7.

Defendant, in his brief, argues that the ALJ is not required

9

to discuss every piece of evidence in the record (Doc. 15 at 12).
However, in the case of <u>Knight v. Astrue</u>, 388 Fed. Appx. 768, 771
(10th Cir. July 21, 2010), the court held as follows:

> In reaching this conclusion, [the ALJ] said
> nothing about Dr. Campbell's diagnoses and
> opinions regarding the severity of Knight's
> depression. In fact, he never mentioned Dr.
> Campbell in his decision at all.
>
> ***************
>
> ...the Commissioner correctly notes that "an
> ALJ is not required to discuss every piece of
> evidence." <u>Clifton v. Chater</u>, 79 F.3d 1007,
> 1009-10 (10th Cir.1996). That principle is
> not controlling here, however. Rather, as
> this court has noted, an ALJ's notice of
> determination "must be sufficiently specific
> to make clear to any subsequent reviewers the
> weight the adjudicator gave to the treating
> source's medical opinion and the reasons for
> that weight." <u>Watkins v. Barnhart</u>, 350 F.3d
> 1297, 1300 (10th Cir.2003) (internal
> quotation marks omitted).

In light of the ALJ's failure to include the non-exertional
limitations of Dr. Munhall in his RFC findings, the ALJ clearly
erred by ignoring this medical opinion.

   Defendant correctly points out that the opinions of other
medical sources were considered by the ALJ (R. at 15-16, 17), and
they included similar, although not identical limitations.  Those
limitations are as follows:

> 1. Dr. Eyster: no forward bending or twisting
> except at hips (R. at 279, October 15, 2008).
>
> 2. Dr. Eyster: He should not be doing
> repetitive lifting over fifty pounds, no
> repetitive over seventy-five pounds and the

patient is not to do repetitive forward
bending except that which is allowed to be
done at the hip (R. at 316, March 19, 2009).

3. Dr. Brown: I agree with Dr. Eyster that he
should not do heavy lifting and he should do
all lifting utilizing proper body mechanics
if he does not obtain additional treatment
(R. at 293, January 15, 2009).

4. Dr. Brown: He should permanently avoid
lifting above 40 pounds occasionally, 20
pounds frequently and all lifting should be
done utilizing proper body mechanics.  He
should not flex or rotate the lumbar spine
greater than 30 degrees (R. at 324, October
12, 2009).

Although both Dr. Eyster and Dr. Brown included some non-

exertional postural limitations, none of these limitations were

included in the ALJ's RFC findings, and the ALJ offered no

explanation for not including those limitations in his RFC

findings.

The record also contains a state agency physical RFC

assessment by Dr. Bullock, dated April 9, 2009.  It included the

following non-exertional limitations:

never climb ladders/ropes/scaffolds

occasionally stoop and crouch

avoid concentrated exposure to extreme cold

(R. at 297, 299).  Dr. Bullock also stated the following:

Clmt's back only hurts when he works at a job
requiring not only frequent lifting, bending
& moving, but also requires it at an awkward
angle, or in a position not allowing knee
bending to accom[m]odate proper lifting.
Clmt should avoid these jobs, otherwise he

11

> can do many types of work, as he has no loss
> of muscle strength, no loss of reflexes, no
> loss of sensation, no loss of muscle tone, no
> muscle spasm, no straight leg raising
> problems.

(R. at 302). However, in violation of the regulations, rulings,

and case law, this medical opinion was also not even mentioned by

the ALJ. Again, without explanation, none of the non-exertional

limitations set forth by Dr. Bullock or by the other medical

source opinions were included in the ALJ's RFC findings.

Defendant argues that the failure to include the non-

exertional limitations of Dr. Munhall was harmless error (Doc. 15

at 13). Courts should apply the harmless error analysis

cautiously in the administrative review setting. Fischer-Ross v.

Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). However, it may be

appropriate to supply a missing dispositive finding under the

rubric of harmless error in the right exceptional circumstance

where, based on material the ALJ did at least consider (just not

properly), the court could confidently say that no reasonable

factfinder, following the correct analysis, could have resolved

the factual matter in any other way. Fischer-Ross, 431 F.3d at

733-734; Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).

First, the court would note that the ALJ did not mention or

expressly consider the opinions or limitations set forth by Dr.

Munhall in his decision. Second, defendant argues that these

non-exertional limitations are not required for light work (Doc.

12

15 at 14).  Even though the ALJ did not argue or assert that the
non-exertional limitations of Dr. Munhall or the other medical
sources were not required for light work, the court will examine
the Social Security Rulings that address this issue.  SSR 83-10
states that the majority of light jobs can be accomplished with
occasional, rather than frequent stooping.  1983 WL 31251 at *6.
SSR 83-14 states that light work requires the worker to do
occasional bending of the stooping type, for no more than one-
third of the workday to bend the body downward and forward by
bending the spine at the waist.  1983 WL 31254 at *4.  It goes on
to say that the inability to ascend or descend scaffolding,
poles, and ropes, the inability to crawl on hands and knees, or
environmental restrictions, such as the need to avoid exposure to
feathers, would not significantly affect the potential unskilled
light occupational base.  1983 WL 31254 at *5.

      However, even after considering these Social Security
Rulings, there is no evidence before the court of the impact, if
any, of Dr. Munhall's restrictions of no static or repetitive
trunk rotation, and no static or repetitive loaded trunk flexion,
bending, squatting, or stooping, on plaintiff's ability to
perform a full range of light work.  Neither the SSA rulings
noted above, nor any other SSA regulation or ruling, clearly
addresses these specific restrictions on a person's ability to
perform light work.  In the absence of any evidence or clear

direction from the regulations or rulings of the agency, the
court will not speculate on the potential impact of the
restrictions set forth by Dr. Munhall on plaintiff's ability to
perform a full range of light work.

The ALJ stated in his decision that, based on an RFC
capacity for a full range of light work, a finding of not
disabled is "directed" by Medical-Vocational Rule 202.14 (R. at
18).  At step five, the burden shifts to the Commissioner to show
that the claimant can perform other work that exists in the
national economy.  <u>Nielson</u>, 992 F.2d at 1120; <u>Thompson v.
Sullivan</u>, 987 F.2d 1482, 1487 (10th Cir. 1993).  To meet this
burden, the Commissioner may rely on the Medical-Vocational
Guidelines (grids). 20 C.F.R. Part 404, Subpt. P, App. 2.
<u>Williams v. Bowen</u>, 844 F.2d 748, 751 (10th Cir. 1988).  The grids
contain tables of rules which direct a determination of disabled
or not disabled on the basis of a claimant's RFC category, age,
education, and work experience.  <u>Thompson</u>, 987 F.2d at 1487.

Whenever a claimant's residual functional capacity is
diminished by both exertional and nonexertional impairments, the
defendant must generally utilize expert vocational testimony or
other similar evidence to establish the existence of jobs in the
national economy.  <u>Hargis v. Sullivan</u>, 945 F.2d 1482, 1491 (10th
Cir. 1991).  Resort to the grids is particularly inappropriate
when evaluating nonexertional impairments.  <u>Hargis</u>, 945 F.2d at

14

1490.  However, vocational expert testimony is not always required when a claimant has exertional and nonexertional impairments.  The mere presence of a nonexertional impairment does not preclude reliance on the grids.  The nonexertional impairment must interfere with the ability to work.  In summary, the grids should not be applied conclusively in a particular case unless the ALJ finds that: 1) the claimant has no significant nonexertional impairment, 2) the claimant can do the full range of work at some RFC level on a daily basis, and 3) the claimant can perform most of the jobs in that RFC level.  Thompson v. Sullivan, 987 F. 2d 1482, 1488 (10th Cir. 1993).

The ALJ stated that a finding of not disabled was "directed" by the grids, based on a finding that plaintiff could perform a full range of light work (R. at 18).  However, as noted above, resort to the grids is particularly inappropriate when evaluating non-exertional impairments.  Given the lack of evidence regarding the potential impact of the non-exertional impairments set forth by Dr. Munhall, the ALJ's failure to even discuss Dr. Munhall's report, or indicate why these non-exertional impairments would not significantly impact plaintiff's ability to perform a full range of light work, and the fact that no social security regulation or ruling, including SSR 83-10 and 83-14, directly addresses the limitations set forth by Dr. Munhall, the court cannot find that the failure by the ALJ to consider the report by

15

Dr. Munhall is harmless error.  This case shall therefore be remanded in order for the ALJ to consider the report by Dr. Munhall, as well as the other medical opinion evidence, and either include the limitations set forth in the medical source opinions, or provide a legally sufficient explanation for not including those limitations in his RFC findings.  If the non-exertional limitations of Dr. Munhall or the other medical sources are included in the RFC findings, the ALJ shall make a determination of the impact, if any, of those non-exertional limitations on plaintiff's ability to work.  The ALJ should give serious consideration to the use of a vocational expert on this issue.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 5th day of June 2012, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge